1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| 0912139 B.C. LTD., a Canadian corporation, and PAKAGE APPAREL INC., a Canadian corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RAMPION USA INC., a Washington corporation, and RAMPION ENTERPRISES LTD., a Canadian corporation, <br><br> Defendants. | CASE NO. 02:18-CV-01464-JLR <br><br> **DEFENDANTS RAMPION USA INC. AND RAMPION ENTERPRISES LTD.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF** <br><br> **DUE DATE: June 7, 2019** |

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

# TABLE OF CONTENTS

I.    "Front Portion"..................................................................................................1

    A.    Pakage Incorrectly Asserts "Front Portion" Could Contain More than the Outermost Portion of the Undergarment's Body ..............................1

        1.    "Front Portion" Does Not Have a "Readily Understood Meaning" ...........1

        2.    Pakage Misrepresents the Specification, Which Does Not Support Pakage's Overbroad Construction ...........................................2

        3.    Pakage Misrepresents the Prosecution History.............................3

    B.    Pakage's Proposed Construction Fails to Bound the "Front Portion" By the Waistband Seam, Side Seams, and First Seam ......................5

II.   "Stretch Panel"..............................................................................................7

III.  "Gathered from Side-to-Side and Top-to-Bottom by the Stretch Panel" ...........9

IV.   "Top Location" / "Bottom Location" .........................................................12

    A.    The '496 Patent's Prosecution History Does not Support Pakage's Proposed Construction ..................................................12

    B.    Pakage's Argument Regarding the Terms' "Plain Meaning" Is Not Supported by Either the Intrinsic or Extrinsic Evidence ...................13

    C.    Pakage's Arguments Require That the Specification Be Ignored .........14

V.    "Substantially Continuously Along Either Side of the Front Portion".............16

VI.   "Crotch Panel" ............................................................................................19

VII.  "Asymmetrical Stretch Characteristics" ........................................................20

VIII. "Rectangular"..............................................................................................22

IX.   "A Dart Seam Stitched Along a Bottom Portion of the Pouch" ......................23

X.    CONCLUSION............................................................................................24

CERTIFICATE OF SERVICE ..............................................................................26

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ActiveVideo Networks v. Verizon Commc'ns, Inc.*,
 694 F.3d 1312 (Fed. Cir. 2012)......................................................................9, 20

*AstraZeneca AB v. Andrx Labs, LLC*,
 No. 14-8030, 2017 WL 111928 (D.N.J. Jan. 11, 2017)........................................13

*Aventis Pharms., Inc. v. Amino Chems. Ltd.*,
 715 F.3d 1363 (Fed. Cir. 2013)............................................................................16

*Biovail Corp. Int'l v. Andrx Pharms., Inc.*,
 239 F.3d 1297 (Fed. Cir. 2001)............................................................................18

*Blackbird Tech LLC v. ELB Elecs., Inc.*,
 895 F.3d 1374 (Fed. Cir. 2018)............................................................................19

*CAAS Techs., LLC v. Envision Telephony, Inc.*,
 No. C15-0624JLR, 2016 U.S. Dist. LEXIS 73552 (W.D. Wash. June 6, 2016) ......................8

*Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*,
 347 F.3d 1314 (Fed. Cir. 2003)............................................................................16

*Durel Corp. v. Osram Sylvania, Inc.*,
 256 F.3d 1298 (Fed. Cir. 2001)............................................................................16

*Ecolab, Inc. v. Envirochem, Inc.*,
 264 F.3d 1358 (Fed. Cir. 2001) ...........................................................................16

*General Elec. Co. v. Int'l Trade Comm'n*,
 685 F.3d 1034 (Fed. Cir. 2012) ......................................................................22-23

*Gentry Gallery, Inc. v. Berkline Corp.*,
 134 F.3d 1473 (Fed. Cir. 1998)............................................................................16

*In re Hayes Microcomputer Prods., Inc. Patent Litig.*,
 982 F.2d 1527 (Fed. Cir. 1992)............................................................................11

*Hologic, Inc. v. Smith & Nephew, Inc.*,
 884 F.3d 1357 (Fed. Cir. 2018)............................................................................11

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

*Home Diagnostics, Inc. v. LifeScan, Inc.*,
   381 F.3d 1352 (Fed. Cir. 2004)..................................................................12

*Int'l Test Solutions, Inc. v. Mipox Int'l Corp.*,
   No. 16-cv-00791-RS, 2017 U.S. Dist. LEXIS 54630 (N.D. Cal. Apr. 10, 2017)....................21

*InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*,
   690 F.3d 1318 (Fed. Cir. 2012)..................................................................15

*Interval Licensing LLC v. AOL, Inc.*,
   766 F.3d 1364 (Fed. Cir. 2014)..................................................................22

*Kraft Foods, Inc. v. Int'l Trading Co.*,
   203 F.3d 1362 (Fed. Cir. 2000)..................................................................16

*Lucent Techs., Inc. v. Gateway, Inc.*,
   525 F.3d 1200 (Fed. Cir. 2008)..................................................................23

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008)................................................................9, 20

*On Demand Mach. Corp. v. Ingram Indus.*,
   442 F.3d 1331 (Fed. Cir. 2006).............................................................. 15-16

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)...........................................................7, 13, 14

*Pisony v. Commando Constr. Inc.*,
   W-17-CV-00555-ADA, 2019 U.S. Dist. LEXIS 31524 (W.D. Tex. Jan. 23,
   2019)........................................................................................9

*Plantronics, Inc. v. Aliph, Inc.*,
   724 F.3d 1343 (Fed. Cir. 2013)..................................................................15

*Praxair, Inc. v. ATMI, Inc.*,
   543 F.3d 1306 (Fed. Cir. 2008)..................................................................21

*Renishaw PLC v. Marposs Societa' per Azioni*,
   158 F.3d 1243 (Fed. Cir. 1998) .................................................................14

*Rexnord Corp. v. Laitram Corp.*,
   274 F.3d 1336 (Fed. Cir. 2001)..................................................................15

*Toro Co. v. White Consol. Indus.*,
   199 F.3d 1295 (Fed. Cir. 1999)..................................................................15

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

*Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*,
    473 F.3d 1173 (Fed. Cir. 2006)..............................................................................19

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)..............................................................................13

*Wang Labs., Inc. v. Am. Online, Inc.*,
    197 F.3d 1377 (Fed. Cir. 1999)..............................................................................16

**Statutes**

35 U.S.C. § 113..............................................................................11

**Other Authorities**

37 C.F.R. § 1.81(a)..............................................................................11

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

In its Opening Claim Construction Brief (Dkt. 49 ("Pakage Br.")), Pakage consistently turns to extrinsic evidence to support its proposed constructions while downplaying, or outright ignoring, the intrinsic record. Rampion agrees with Pakage that "the technology at issue . . . [is] familiar and easily understood" (Pakage Br. at 1), but that fact does not mean that you can disregard the words of the claims, the specification, and the prosecution history in favor of so-called "treatises." Rampion's constructions, consistent with the intrinsic record, should be adopted.

## I.   "Front Portion"

Pakage's proposed construction is overbroad and inconsistent with both intrinsic and extrinsic evidence in two ways. First, Pakage incorrectly asserts the term "front portion" means something broader than the outermost portion of the undergarment's body. Second, Pakage's proposed construction fails to bound the front portion between the waistband seam, side seams, and first seam, as required by the claims and reinforced by the specification.

### A.   Pakage Incorrectly Asserts "Front Portion" Could Contain More than the Outermost Portion of the Undergarment's Body

Pakage presents three arguments for its construction. None withstands scrutiny.

#### 1.   "Front Portion" Does Not Have a "Readily Understood Meaning"

Contrary to Pakage's assertion, there is no evidence that the term "front portion" has a "readily understood meaning" applicable to the Patents-in-Suit. (*See* Pakage Br. at 4-5.) Pakage's only purported evidence is extrinsic evidence—a patternmaking book which does *not* define the terms "front" or "portion" – separately or collectively. (*See generally* Dkt. 47-10 (JCC Ex. 8).) Pakage fails to explain why such a book would inform one of ordinary skill in the art of the particular Patents-in-Suit as to the meaning of "front portion" in the context of male undergarments. This book uses "front portion" three times, each time with respect to a garment's sleeve and apparently in a colloquial, non-technical sense to differentiate opposite sides of the

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

sleep, as is obvious upon review.[1]  (*See id.* at 3 (describing shirt sleeve cuff, "[l]engthen the back portion of the sleeve 1/4 inch (extra length to go around the elbow), and blend it to nothing at the *front portion* of the sleeve (see the dashed line on the sketch)."), 5 (describing jacket sleeve, "[c]onnect the quarter marks on the *front portion*, then mark the dart point an equal distance from the grainline as the front quarter line along the elbow line."), and 6-7 (describing coat sleeve, "[c]onnect the quarter marks on the *front portion*, then mark the dart point an equal distance from the grainline as the front quarter line along the elbow line.") (emphases added).)

These quotes obviously do not relate to male undergarments and more importantly ignore the intrinsic evidence.

### 2.     Pakage Misrepresents the Specification, Which Does Not Support Pakage's Overbroad Construction

Pakage alleges that the specification "contemplates that the front portion may have a multi-part construction to accommodate a fly opening."  (Pakage Br. at 6 (citing '030 Patent at 2:34-48).)  Pakage mischaracterizes this passage.  It does not support a conventional fly, as Pakage implies; rather, it states that a tunnel (*i.e.*, a hole) within the area of the front portion, out of which the user may urinate, may be included within the scope of the invention.  *See* '030 Patent at 2:46-48 ("A *tunnel opening* or other suitable opening may optionally be provided *in front portion 18* to permit the wearer to urinate conveniently." (emphasis added)).  Pakage also conveniently ignores that, during prosecution, it amended claim 1 and distinguished prior art references "which require non-continuous side seams to provide a fly" to overcome the Examiner's rejection.  (Dkt. 47-6 (JCC Ex. 4) at 30.)

Pakage further argues that because some figures show the front portion from the outside and other figures show the front portion from the inside, these views somehow describe different

---

[1] Pakage also cites the book's use of the word "front" in distinguishing the front from the back of shorts.  (*See id.* at 4.)  This book's use of "front" is irrelevant for the same reasons discussed above.

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

examples. (*See* Pakage Br. at 6-7 (citing '030 Patent at 2:1-2 [Brief Description of Figure 4], Figures 3-4).) Pakage implies that the "examples" include more than the "outermost layer," as Rampion contends. But that argument misreads Rampion's proposed construction: the front portion is the outermost layer *of the body*. To be clear, the specification does not disclose *multiple layers*. It simply shows *two sides* of a *single panel* of fabric comprising the front portion. *See* '030 Patent at Figures 1-2 (showing front portion from outside), 3-4 (showing front portion from inside), 1:66-2:2 (Figs. 2-4 are each a view of the "undershorts" of Fig. 1). To the contrary, the only express disclosure of the front portion in the specification is as a single layer of fabric. *See id.* at Figures 5-6 (showing cut-away view of front portion (18) as single layer of fabric), 7 (showing cross section of undergarment, wherein front portion (18) is single layer of fabric, like rest of body).

### 3. Pakage Misrepresents the Prosecution History

Pakage takes a statement it made about U.S. Pat. No. 2,235,849 ("Reis") during the prosecution of the application issuing as the '030 Patent out of context in an effort to support its position that the front portion is not limited to the outermost layer of the body. In context, however, it is clear that Reis teaches a "front portion" that is only a single layer of fabric, and Pakage's quoted statement about it does not support Pakage's litigation position.

Reis discloses two plies of fabric – plies 22 and 23 – in the front of the garment. (Dkt. 47-58 (JCC Ex. 56) at 2 (Figs. 1-3), 3 (2:47-51), 4 (3:13-17).) As shown below, only ply 23 is the "front portion." Ply 22 is the "stretch panel." Ply 22 is on the inside of the undergarment and contains an opening (28) for the wearer's genitals, while ply 23 overlaps ply 22 on the outside. (*Id.*) Reis does not teach any other ply of fabric that would overlap with either plies 22 or 23. (*See generally id.*) Reis uses the terms "portion," "section," "front portion," and "front section" interchangeably and inconsistently to describe plies 22 and 23 (both separately and collectively)

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

and even to describe other disclosed features of his invention (*id.* at 3 (1:12-13, 2:8, 2:16, 2:25-26, 2:33, 2:47, 2:54)).

In an Office Action in which the claims were rejected as obvious over Reis and other prior art, the Examiner identified ply 22 of Reis to be the "stretch panel" and ply 23 of Reis to be the "front portion." (*See* Dkt. 47-6 (JCC Ex. 4) at 8-9.[2]) In response to the Office Action, Pakage did not dispute the Examiner's conclusion that plies 22 and 23 were the "stretch panel" and "front portion," respectively. (*See generally id.* at 28-36.[3]) Rather, Pakage amended the claims to overcome Reis and argued as to how the newly narrowed claims distinguished Reis based on other limitations. (*See id.* at 28-30.) Distinguishing amended claim 1 from Reis, Pakage argued only that (1) plies 22 and 23 of Reis do not form "[a] pouch for receiving <u>and holding</u> the wearer's genitals" (*id.* at 29 (emphasis in original)); (2) ply 22 does not "gather" ply 23 as required by the newly amended claims (*id.*); (3) Reis does not disclose fabric of appropriate elastic quality for the stretch panel (*id.*); and (4) Reis does not teach the "substantially continuously" limitation, which was added by amendment in response to the Office Action (*id.* at 30).

While Pakage stated in response to that Office Action that "Reis discloses the two layers of material in the front portion being stitched together in such a way as to give a shape to the overall article" (*id.* at 29; *see also* Pakage Br. at 6 (quoting same)), this statement does *not* imply that Reis somehow taught or suggested a front portion – as used in the Patents-in-Suit – with more than one layer of material. As discussed above, Reis teaches two layers – the outermost layer or "front portion" (ply 23) and the innermost layer or "stretch panel" (ply 22), as confirmed by the Examiner. Reis does not teach that any layer of material other than ply 23 would overlap with ply

---

[2] The Examiner misstated "stretch panel" as "stretch portion" (*see id.*), but this typographical error has no impact on the Examiner's analysis or the parties' arguments here.

[3] While Reis was cited in the Examiner's prior art rejection, Pakage's response mentioned both Reis and a second prior art reference of record from the same inventor. (*See id.* at 28-30.) This other reference was not materially different with respect to this discussion or Pakage's response to the Office Action, and the preceding analysis regarding Reis applies equally to this other reference.

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

22.  (*See generally* Dkt. 47-58 (JCC Ex. 56).)  Reis also uses the terms "portion," "section," "front portion," and "front section" interchangeably and inconsistently to describe plies 22 and 23 (both separately and collectively) and even other disclosed features of his invention (*id.* at 3 (1:12-13, 2:8, 2:16, 2:25-26, 2:33, 2:47, 2:54)).

There is no evidence that the term "front portion" is a term of art or that "front portion" means the same thing in every document in which it may be found.  This is clear from Pakage's cited patternmaking book discussing sleeves.  (*See* Section I.A.1 *supra*.)  During prosecution, Pakage did not argue that plies 22 and 23 were something other than the stretch panel and front portion, respectively, or that the front portion included anything more than ply 23.  In fact, in the same referenced response, Pakage adopted the Examiner's understanding of plies 22 and 23 as the "stretch panel" and "front portion," respectively, and Pakage actually distinguished the "front portion" from the "stretch panel" in the following argument to the Examiner:  "[T]he *front portion* of the underwear disclosed by Reis is not gathered by a *stretch panel*." (*See* Dkt. 47-6 (JCC Ex. 4) at 30 (emphasis added).)

**B.     Pakage's Proposed Construction Fails to Bound the "Front Portion" By the Waistband Seam, Side Seams, and First Seam**

Pakage also argues that the "front portion" is not bound by the waistband seam, side seams, and first seam.  (Pakage Br. at 8.)  Pakage fails to analyze how the front panel is defined in relation to other features in claim 1, which definition directly implicates the front panel's function.  (*See* Dkt. 48, Defendants' Opening Claim Construction Brief ("Rampion Br.") at 3-4 (discussing how claim 1 describes what the front panel is).)  Indeed, if the front portion were not bound by the waistband seam, side seams, and first seam, the claim becomes nonsensical.  The side edges of both the stretch panel and front portion must attach.  *See* '030 Patent at Claim 1 ("*side edges* attached to the body at side seams extending substantially continuously *along either side of the front portion*" (emphasis added)).  If the front panel were to extend beyond the side seams, the side

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

seams connecting the stretch panel would not "extend[] substantially continuously *along* either side of the front portion" *Id.* The same is true as to the Y-axis as well. This same claim element requires the side seams "extend . . . from the first seam to the waistband seam," *id.*, meaning that the side of the front panel must span from the first seam to the waistband seam. Another claim element specifying the length and width of the front portion likewise requires that the front portion be bound by the waistband seam, side seams, and first seam. *See id.* ("a length measured along the front portion between the first seam and the waistband seam . . . a width measured along the front portion between the side seams"). Furthermore, the claim elements introducing the crotch panel (below the first seam) and waistband (above the waistband seam) further support this conclusion. *See id.* ("crotch panel . . . joined to the front portion along a first seam . . . a waistband attached by a waistband seam at an upper edge of the body"). The specification is in accord. (*See* Rampion Br. at 4 (citing '030 Patent at Abstract, 1:36-42, 2:36-38, 5:43-45, 6:28-35, 6:39-47, 7:8-13).)

Pakage argues that Figure 4 "shows the 'front portion[]' . . . as extending clearly beyond the side seams and including the adjacent material outside the side seams." (Pakage Br. at 8.) That argument makes no sense. Apparently, the argument is: because the only description of Figure 4 states the drawing is "an enlarged view *of the front portion* of the undershorts of FIG. 1 viewed from the inside," all of the features disclosed must be "the front portion." (*See id.* (citing '030 Patent at 2:1-2 (emphasis added)).) Such a read is contrary to what the figure plainly shows. The only location where Figure 4 shows the front portion (18) is through the opening (*i.e.*, on the inside of the opening's soft bounded edge (31)) of the stretch panel (22) (*see* '030 Patent at Fig. 4), which is consistent with Rampion's proposed construction. The rest of the figure shows features other than the front panel: the outside edges of the stretch panel comprise the side seams (29), waistband seam (28), and first seam (26), which are then followed by the body (14), waistband (12), and crotch panel (25), respectively. *See id.* Furthermore, Figures 1-8 show the same embodiment. *See*

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

'030 Patent at 1:66-2:12 (describing Figures 2-8 as each showing "the undershorts of FIG. 1").[4] *None* of the figures ever shows front portion (18) as labeled outside of the area bound by the waistband seam, side seams, and first seam. For example, Figure 6 labels front portion (18) in the most bulbous part of the pouch and shows body (14) on the outside of seam (29) and waistband (12) above waistband seam (28). Pakage does not contend that the written description indicates that the front portion is other than the area of the undergarment's body bounded by these four seams.

Finally, in a footnote, Pakage appears to argue that Rampion's proposed construction is inconsistent with the claims of the '496 Patent because claim 1 of the '496 Patent recites "top location" and "bottom location" in lieu of "waistband seam" and "first seam," respectively. (Pakage Br. at 8 n.4.) Pakage is incorrect. Under a construction that is required by the alleged invention disclosed in, and enabled by, the specification, both "top location" and "bottom location" would have the same meaning as "waistband seam" and "first seam," respectively. (*See* Section IV, *infra*; *see also* Rampion Br. at 5-11.)

## II. "Stretch Panel"

Pakage asserts that "'[s]tretch panel' is not a phrase that jurors are likely to be familiar with outside of this case." (Pakage Br. at 9.) Rampion agrees, but that is not the relevant issue for claim construction – one does not review a claim term in a vacuum. Instead, we begin by looking at the claim term in the context of the claim in which it sits. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("To begin with, the context in which a term is used in the asserted claim can be highly instructive."). Here, the context of claim 1 clearly defines and explains the claimed stretch panel:

"*a stretch panel* attached to the body inside the front portion, *the stretch panel*

---

[4] Figures 1-8 are the only figures showing the undergarment with labels. Figures 9-15 show only the undergarment, with no labels, and Figure 16 shows only the stretch panel and not the rest of the undergarment.

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

*comprising* a sheet of elastically resilient four-way stretch material having a top edge attached to the body at the waistband seam, a bottom edge attached at the first seam, side edges attached to the body at side seams extending substantially continuously along either side of the front portion from the first seam to the waistband seam and an opening for receiving a wearer's genitals, the opening having a rounded bottom edge and opposing side edges that are spaced apart from one another on either side of the opening; *the stretch panel being* resiliently elastic both in a direction between the top edge and the bottom edge and in a direction between the side edges, *the stretch panel having* a length when unstretched smaller than a length measured along the front portion between the first seam and the waistband seam and a width when unstretched smaller than a width measured along the front portion between the side seams . . ."

'030 Patent at claim 1 (emphasis added). Pakage appears to agree: "The context of the claim language itself is clear and specific . . . ." (Pakage Br. at 9.) What is unclear is why Pakage is attempting to take some, but not all, of the explicit "stretch panel" claim limitations and reword them. Pakage's proposed construction appears to incorporate the highlighted limitations (above) while eliminating the rest. Rather than help the jury, Pakage's construction will mislead or, at best, confuse the jury, perhaps causing them to think the highlighted claim limitations – included in the claim *and* repeated in the construction – are more important than those not included in the construction. Pakage's construction could also lead the jury to mistakenly conclude that the claim limitations not included in the construction need not be met by the accused products. *See CAAS Techs., LLC v. Envision Telephony, Inc.*, No. C15-0624JLR, 2016 U.S. Dist. LEXIS 73552, at *31 (W.D. Wash. June 6, 2016) (Robart, J.) ("Envision's proposed construction *suffers the same flaw* as its proposed construction of 'correlation value,' *in that Envision seeks to incorporate context that is expressly included in the claim's language*.") (emphasis added, citations omitted).

Pakage's proposed construction is also too broad. Claim 1 requires the stretch panel to be "attached to the body *inside the front portion*" ('030 Patent at Claim 1 (emphasis added)), yet Pakage's proposed construction omits any reference to the "front portion." Instead, it states that the "stretch material" is "joined to the inside of the garment's body." While the front portion is indisputably part of the garment's body, it is a specific and limited section of the body. *See, e.g.*,

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

'030 Patent at 2:37-38 ("A front portion 18 of body 14 . . ."); Fig. 1 (showing "body" 14 and "front portion" 18). A construction that effectively replaces the narrower "front portion" term with the broader "body" term is improper.

Pakage's reference to *O2 Micro* to suggest that it is legal error to assign a claim term its plain and ordinary meaning anytime one party proposes the same and the opposing party proposes a construction is an incorrect statement of the law. *See ActiveVideo Networks v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012) (district court did not err in concluding disputed terms required no construction, where the plaintiff's "proposed construction erroneously read[] limitations into the claims . . . .") (*citing O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1363 (Fed. Cir. 2008)); *see also Pisony v. Commando Constr., Inc.*, W-17-CV-00555-ADA, 2019 U.S. Dist. LEXIS 31524, at *15-17 (W.D. Tex. Jan. 23, 2019) ("The Court finds that there is nothing about the claim term that is confusing; therefore, the term requires no construction. . . . [T]he words chosen by the scrivener of Claim 6 are more than adequate to be understood by one who is skilled in the art."). As claim 1 clearly describes and defines the claimed stretch panel, one of ordinary skill does not need a further definition to understand the same.

### III.    **"Gathered from Side-to-Side and Top-to-Bottom by the Stretch Panel"**

Without support, Pakage asserts that claim 1 uses "'gathered' only in its general, everyday sense, not in any technical sense." (Pakage Br. at 11.) Pakage does not explain what it means by "everyday sense" or "technical sense," and Pakage does not cite any authority or evidence by way of explanation. In contrast to Pakage's conclusory statement, the claims and specification give special meaning to the "gathered from" term. The claim language states that the stretch panel, when unstretched, is shorter and narrower than the front portion, and explains that the stretch panel's smaller size relative to the front portion *causes* the front portion to gather. (*See* Rampion Br. at 15 (citing '030 Patent at Claim 1).) As the specification describes at length, the way to generate such an effect is for the stretch panel to be pre-stretched when attached to the (unstretched

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

or relatively less stretched) front portion which, when relaxed, gathers the front portion along the top, bottom, and sides. (*See id.* at 15-16 (citing '030 Patent at Fig. 16, 5:43-6:18, 6:28-38).) Restated, after attaching the edges of the pre-stretched stretch panel to those of the front portion, the stretch panel relaxes to an unstretched condition. When it does so, the length of the seams reduce, meaning the area of the front portion along the seams (*i.e.*, the edges of the front portion) must do the same. That area must go somewhere, so it "gathers" along the waistband seam, side seams, and front seam. Despite Pakage's conclusory statement to the contrary, "puckered" is a synonym for "gathered," and both terms explain the same concept described in the Patents-In-Suit. (*See* Rampion Br. at 16 (citing Dkt. 47-60 (JCC Ex. 58) at 6; Dkt. 47-63 (JCC Ex. 61) at 7; Dkt. 47-61 (JCC Ex. 59) at 7).)

Pakage faults Rampion's proposed construction for proposing a word to explain "gathered" that is not used in the specification. There is nothing wrong with using words that are not used in the specification in construing a claim term so long as the concept is disclosed there and the substituted term is helpful to the jury – as "puckered" is. Pakage cites no authority for the contrary proposition. Indeed, Pakage's proposed "drawn up" does not appear anywhere in the intrinsic evidence, and Pakage fails to explain the scope of "drawn up," leaving Rampion and the Court to guess what Pakage contends the appropriate scope is.

Oddly, Pakage asserts that "[n]one of the *stretch panel seams* of any embodiment described or depicted anywhere in either Asserted Patent features any puckering." (Pakage Br. at 12 (emphasis added).) Pakage does not explain why it focuses on the *stretch panel*, given that the claim makes clear that it is the *front portion* which is gathered. *See* '030 Patent at Claim 1 ("the *front portion* is gathered . . . by the stretch panel" (emphasis added)). In other words, Pakage would apparently look to the inside of the seams (*i.e.*, from the side at which the stretch panel is attached) to determine whether there is "gathering." Contrary to Pakage's apparent interpretation, one of ordinary skill would understand to examine the *outside* of the seams (*i.e.*, looking at the

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

front portion, where the gathering would not be obstructed by the stretch panel).

Pakage attempts to override the claim language and written description by arguing that because the figures do not expressly show "puckering" around each of the waistband seam, side seams, and first seam, "gathering" cannot mean "puckering" – although Pakage concedes that the light-weight lines in the front portion in Figures 9-15 of the '030 Patent "perhaps could be described as puckering." (Pakage Br. at 11-12.) Pakage cites no authority for the proposition that the figures must show every detail of the claimed invention.[5] Indeed, that proposition is contrary to law: "The written description does not require that every claimed element be illustrated in the figures, particularly in predictable arts . . . ." *Hologic, Inc. v. Smith & Nephew, Inc.*, 884 F.3d 1357, 1362-63 (Fed. Cir. 2018) (citing 35 U.S.C. § 113 (requiring only that "applicant shall furnish a drawing where necessary for the understanding of the subject matter sought to be patented"); *In re Hayes Microcomputer Prods., Inc. Patent Litig.*, 982 F.2d 1527, 1536 (Fed. Cir. 1992) (concluding substantial evidence supports the finding that a "microprocessor" illustrated in a figure constitutes sufficient written description support for claimed timing means and other claim elements not depicted in figures); 37 C.F.R. § 1.81(a)).

Finally, Pakage argues that Rampion's proposed construction is inconsistent with the claims of the '496 Patent because claim 1 of the '496 Patent recites "top location" and "bottom location" in lieu of "waistband seam" and "first seam," respectively. (Pakage Br. at 12.) Pakage is incorrect. Under a construction that comports with the alleged invention disclosed in, and enabled by, the specification, both "top location" and "bottom location" would have the same meaning as "waistband seam" and "first seam," respectively. (*See* Section IV, *infra*; *see also* Rampion Br. at 5-11.)

---

[5] The cases cited by Pakage relate to the rebuttable proposition that a construction should not exclude the preferred embodiment. These cases are irrelevant to the proposition Pakage actually advocates.

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

## IV.    "Top Location" / "Bottom Location"

Pakage incorrectly characterizes Rampion's proposed construction of these terms as seeking to "read out the amendments to Claim 1 of the '496 patent." (Pakage Br. at 15.)  In fact, Rampion seeks a construction that comports with the specification's disclosure.  Under the construction Pakage suggests, the claims of the '496 Patent would fail to satisfy the written description requirement.  Tellingly, Pakage does not cite *even once* from the specification in support of its proposed construction, nor could it: Pakage concedes that these are "new terms." (*See id.* at 13.)  The specification simply does not support a construction of "top location" or "bottom location" that is broader than Rampion's.  The specification never discloses these terms, or equivalent terms other than "waistband seam" or "first seam."

### A.    The '496 Patent's Prosecution History Does not Support Pakage's Proposed Construction

Pakage argues that because the terms "top location" and "bottom location" were added during prosecution, they must "have a different, and broader, substantive scope."  (*Id.* at 14.) Pakage's argument misses the mark.  As explained in Rampion's opening brief, the specification does not support a broader construction of these terms than those proposed by Rampion, since such a construction would fail for lack of written description (terms never used in the specification). (*See* Rampion Br. at 6-11.)  Pakage attempts to support its conclusion by citing *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004).  But *Home Diagnostics* is inapposite. In *Home Diagnostics*, while the glucose concentration in a blood sample was measured at the end of a predetermined time, the written description more generally taught that change in concentration may be measured broadly between two or more unspecified points in time.  381 F.3d at 1356-57. Thus, the district court erred by reading into the claim term "a suitable stable endpoint" a requirement that the measurement be at the end of a predetermined time.  *Id.* at 1357.  Unlike *Home Diagnostics*, the specification here does not teach at all that the top and bottom edges of the

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

stretch panel would attach anywhere but the waistband seam and first seam, respectively.

Pakage also cites *AstraZeneca AB v. Andrx Labs, LLC*, No. 14-8030, 2017 WL 111928, at *45 (D.N.J. Jan. 11, 2017), for the proposition that withdrawal of a statutory double patenting rejection establishes a difference in claim scope due to the amendment. (Pakage Br. at 14.) But the facts of that case simply do not apply here. In *AstraZeneca*, as here, there was a parent application (like the '030 Patent here) and a continuation application (like the '496 Patent here). 2017 WL 111928 at *21. But in *AstraZeneca*, unlike the instant case, there was support in both the parent and continuation for the subject matter claimed in both applications. Here, however, there is no support whatever in the specification for "top location" and "bottom location." The words never appear in the specification.

## B. Pakage's Argument Regarding the Terms' "Plain Meaning" Is Not Supported by Either the Intrinsic or Extrinsic Evidence

Pakage incorrectly states that Rampion's proposed constructions of "top location" and "bottom location" would be "inconsistent with the plain meaning of the claim language itself." (Pakage Br. at 14.) Pakage improperly seeks to disregard the specification. *See Phillips,* 415 F.3d at 1315 ("[C]laims must be read in view of the specification, of which they are a part." (quotation marks and citation omitted)). Here, the specification does not support a broader construction of the terms than proposed by Rampion because the only location taught or suggested by the specification at which the upper edge of the stretch panel attaches is at the waistband seam, and the only location taught or suggested by the specification at which the bottom edge of the stretch panel attaches is at the first seam. (*See* Rampion Br. at 6-11 (citations omitted).) Pakage seeks to construe these terms broader than the specification allows by citing to extrinsic evidence. Extrinsic evidence cannot be used to contradict the meaning of claims discernible from a thoughtful examination of the intrinsic evidence. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996); *see Phillips*, 415 F.3d at 1319 ("[E]xtrinsic evidence . . . is unlikely to result in a

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence.").

Even the extrinsic evidence cited by Pakage does not support its construction. As discussed in Rampion's opening brief, the majority of the same dictionaries Pakage cites are in fact contrary to Pakage's position because the first relevant definition of "top" is the highest part, "bottom" is the lowest part, and "location" is a particular place. (*See* Rampion Br. at 7, 10-11 (citing Dkt. 47-25 (JCC Ex. 23) at 3 ("the highest or loftiest point or part of anything"; "uppermost or upper part"); Dkt. 47-26 (JCC Ex. 24) at 3 ("the highest place or part"); Dkt. 47-27 (JCC Ex. 25) at 3 ("the highest point, place, or part"); Dkt. 47-28 (JCC Ex. 26) at 3 ("a particular place or position"); Dkt. 47-30 (JCC Ex. 28) at 4 ("the exact position in relation to space")); Dkt. 47-32 (JCC Ex. 30) at 3("the lowest or deepest part of anything"); Dkt. 47-33 (JCC Ex. 31) at 3 ("the lowest part of something")).) Pakage attempts to obfuscate this fact by citing to several exhibit numbers together and not directly stating any of the definitions upon which it relies. (*See* Pakage Br. at 15.) The only other extrinsic evidence Pakage cites – the patternmaking book – is inapposite. The single page Pakage cites is directed to the "top section" of "SURPLICE (OR WRAP) [DRESS] DESIGNS." (Dkt. 47-31 (JCC Ex. 29) at 3.) It simply does not relate to what "top location" would mean to one of ordinary skill in the art for the Patents-in-Suit. Pakage fails to explain its relevance. (*See* Pakage Br. at 15.)

## C.     Pakage's Arguments Require That the Specification Be Ignored

Finally, Pakage asserts that Rampion's proposed construction would "import a feature of exemplary embodiments." (*Id.* at 15.) But Rampion does not seek to "import a feature"; rather, Rampion seeks a construction that "most naturally aligns with the patent's description of the invention." *Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). The cases Pakage cites are all distinguishable from, and

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

therefore inapplicable to, the situation at hand. The term at issue in *Plantronics, Inc. v. Aliph, Inc.* was amenable to a construction that did not limit its shape based on the claims' silence on shape and the specification's express description of several different shapes of the claim feature. 724 F.3d 1343, 1349-50 (Fed. Cir. 2013). Likewise, the specification in *Rexnord Corp. v. Laitram Corp.* included two embodiments that did not limit whether two claim features could be joined or separate, demonstrating the specification supported a broader construction. 274 F.3d 1336, 1348 (Fed. Cir. 2001). And in *InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, the term "increased power level" was susceptible to a broader meaning than the Administrative Law Judge gave it because, though the written description included an embodiment wherein the power level "continuously" increased, the specification used "continuously" to "refer[] to events that recur intermittently, rather than events that occur without interruption." 690 F.3d 1318, 1328 (Fed. Cir 2012).

Contrary to Pakage's assertion, the Federal Circuit has explained and held that a claim term should not be given a construction which is unsupported by the specification. For example, in *Toro Co. v. White Consol. Indus.*, the Federal Circuit reversed the district court's grant of summary judgment of literal infringement based on a claim term's construction which, like Pakage's proposed constructions, ignored the specification's repeated descriptions of the claimed feature. 199 F.3d 1295, 1302 (Fed. Cir. 1999). There, the patent's specification and figures consistently disclosed that a restriction ring to reduce total air inlet was permanently attached to the claimed air inlet cover, and it did not suggest any other possible configuration. *Id.* at 1301. The district court construed the relevant claim language as not requiring that the restriction ring be attached to the cover. *Id.* at 1300. Because "[n]o such broader invention is here described," the Federal Circuit reversed. *Id.* at 1302. Other cases are in accord. *See On Demand Mach. Corp. v. Ingram Indus.*, 442 F.3d 1331, 1339-40 (Fed. Cir. 2006) ("customer" meant "retail customer" in view of repeated use in specification implying the customer is retail customer, even where patentee did not disavow

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

scope of claim term); *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368-69 (Fed. Cir. 2000) (construing "protective back panel" as being relatively rigid because every disclosed embodiment includes a relatively stiff back, and Examiner's statements during prosecution history acknowledged that specification discussed back as relatively rigid); *Wang Labs., Inc. v. Am. Online, Inc.*, 197 F.3d 1377, 1382-83 (Fed. Cir. 1999); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998); *see also Durel Corp. v. Osram Sylvania, Inc.*, 256 F.3d 1298, 1304 (Fed. Cir. 2001) ("metal oxide" limited beyond specification's express definition to compounds primarily composed of metal cations bonded with oxygen to the exclusion of other metal compounds such as metal hydroxides, where every oxide example in specification was a metal cation bonded with oxygen and no other compound).

## V.   "Substantially Continuously Along Either Side of the Front Portion"

Pakage's proposed construction of the "substantially continuously" term is wrong for at least four reasons. The first needs no explanation: Pakage simply ignores the words "substantially continuously" in its construction.[6] (*See* Rampion Br. at 14.) For this reason alone, Pakage's proposed construction should be rejected. In contrast, Rampion's proposed construction directly addresses these claim terms as supported by the Federal Circuit: "largely, but not necessarily wholly [, uninterrupted]." *See, e.g., Aventis Pharms., Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1377 (Fed. Cir. 2013) (citing *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1366 (Fed. Cir. 2001)); *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1323 (Fed. Cir. 2003)). While Pakage does not treat "largely, but not necessarily wholly uninterrupted" as part of its construction, it also does not dispute it. (*See* Pakage Br. at 16 n.6.)

Second, Pakage wholly ignores the significant prosecution history related to this term. (*See*

---

[6] Pakage contends that "'substantially continuously' refers to the nature—not the length—of the stretch panel seam." (Pakage Br. at 16.) Pakage does not explain what this contention means, nor does Pakage supply any support for it.

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

Rampion Br. at 11-12 (discussing prosecution history).) The "substantially continuously" language was added to the claims during prosecution to overcome a prior art rejection. As the term appears only in the claims, and not in the specification, the file history is the *only* place in the intrinsic record providing an explanation for this term. During prosecution of the application that issued as the '030 Patent, the Examiner rejected the pending claims as unpatentable over Reis. (Dkt. 47-6 (JCC Ex. 4) at 8-9.) Specifically, Reis shows and describes "an opening extending from the point 26 of securement of the tape 25, to the point 26' of such tape . . .":



(Dkt. 47-58 (JCC Ex. 56) at 4 (3:2-4); Fig. 1 (annotated in blue to show "opening" from "point 26" to "point 26'"); *see also id.* at 3 (2:21-24) ("Figure 1 is a front view of a garment in the construction of which my invention has been embodied . . . .").) In response to the Examiner's rejection, Pakage amended claim 1 to require "side edges [of the stretch panel] attached to the body at side seams extending substantially continuously along either side of the front portion." (Dkt. 47-6 (JCC Ex. 4) at 24 (underlining in original).) Pakage contrasted its amended claim 1 with Reis's "non-continuous side seams to provide a fly." (*Id.* at 30.) Importantly, Pakage had to amend its claims to cover "side seams extending substantially continuously along either side of the front portion" for the '030 Patent to issue over Reis's "non-continuous side seams" with "a fly." Pakage utterly fails to address this critical – and conclusive – intrinsic evidence.

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

Third, the prosecution history of the '030 Patent applies equally to the '496 Patent. *See Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1301 (Fed. Cir. 2001). Pakage points to the slightly different claim language in claim 1 of the '030 and '496 Patents in an attempt to support its proposed construction and discredit Rampion's construction. (*See* Pakage Br. at 16.) However, the "substantially continuously" term remains in claim 1 of the '496 Patent, and Pakage cannot point to any other alleged difference in claim 1 or any other reason to avoid and ignore the relevant prosecution history regarding this term for the parent of the '496 Patent, *i.e.*, the '030 Patent. In *Biovail*, the Federal Circuit affirmed the district court's claim construction that applied, "with equal force," the prosecution history relating to a claim limitation in a parent application to the same limitation in a continuation application. 239 F.3d at 1301. During prosecution of the parent application, the applicant amended a claim in response to a prior art rejection and contrasted the amended claim with the prior art reference in the accompanying remarks. *Id.* at 1301-02. The court applied the same distinguishing remarks by the applicant in the prosecution of the parent application in construing the same claim term in the asserted continuation. *Id.* Similar considerations apply here. Pakage added the "at side seams extending substantially continuously" to claim 1 of the application that issued as the '030 Patent after the Examiner rejected claim 1 as unpatentable over Reis. (*See* Dkt. 47-6 (JCC Ex. 4) at 8-9, 24, 30.) As in *Biovail*, Pakage "distinguish[ed]" amended claim 1 over the "Reis references" "which require non-continuous side seams." (*Id.* at 30.) Claim 1 of the '496 Patent, a continuation of the '030 Patent, includes the identical "substantially continuously" limitation. As in *Biovail*, the prosecution history of the '030 Patent applies "with equal force" to the "substantially continuously" limitation in the '496 Patent.

Fourth, Pakage confusingly attempts to argue that the referenced side seams relate only to the stretch panel, not the front portion. (Pakage Br. at 16-17.) Such a reading is inconsistent with the plain language of the claim, the specification, and the file history. Claim 1 in both patents requires "side edges [of the stretch panel] attached to the body at side seams extending

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

substantially continuously along *either side of the front portion*." *See* '030 Patent at Claim 1 (emphasis added). The specification explains, "[s]ide edges of stretch panel 22 are joined to front portion 18 of body 14 *along seams 29 on either side of front portion 18*." '030 Patent at 2:59-60 (emphasis added). Pakage's argument overlooks the fact that the claimed "side seams" "attach" the "stretch panel" to the "sides" of the front portion – the seams necessarily go through both the fabric of the stretch panel ("at side edges") and the fabric of the front portion ("along" the "sides," and not only the "inside" of the front portion). *See*, *e.g.*, Figs. 1, 2, 6 (showing side seams 29 along the entire outside edge of front portion 18). Pakage's attempt to disconnect the term from the claimed "front portion" should be rejected.

## VI. "Crotch Panel"

Pakage's proposed construction seeks to impermissibly add limitations from the specification despite the fact that Pakage chose not to include them in the claim. (*See* Pakage Br. at 17-18.) Pakage's construction inexplicably requires that the crotch panel "be *a separate fabric element* attached via seams to the front portion and *back side of the underwear body in the region adjacent to the wearer's crotch*." (Pakage Br. at 17 (emphasis added).) Pakage cites no legal authority to support reading in these limitations in this context. Indeed, there is no basis to add such limitations. *See Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*, 473 F.3d 1173, 1181 (Fed. Cir. 2006) ("When the claim addresses only some of the features disclosed in the specification, it is improper to limit the claim to other, unclaimed features." (citations omitted); *see also Blackbird Tech LLC v. ELB Elecs., Inc.*, 895 F.3d 1374, 1379 (Fed. Cir. 2018) ("This claim does not recite how the lighting apparatus is installed into an existing light fixture, and it is not required to do so.").

Pakage cites a prior art reference as alleged support for the proposition that a skilled artisan would understand "crotch panel" to include the limitations Pakage wishes to read into the claim.

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

(Pakage Br. at 18 (citing Dkt. 47-49 (JCC Ex. 47)[7]).)  This reference does not indicate that "crotch panel" is understood by those in the art to include such features, only that the garment (a female beach suit) in this invention "may" include such a crotch panel.  (*See id.* at 2:8-18.)

In contrast, Rampion seeks merely to retain the well-defined meaning of the term in the claim itself: "the body include[es] *a crotch panel* extending between the leg openings and *joined to the front portion along a first seam*." '030 Patent at claim 1 (emphasis added).  As discussed in Rampion's opening brief, the claim term clearly defines the term's structural role, which the specification supports and emphasizes.  (*See* Rampion Br. at 23; *see also id.* at 23-24 (noting that specification passages on which Pakage relies are expressly called "examples").)

Because Pakage seeks to improperly add limitations from the specification, this Court should resolve the dispute between the parties as to "crotch panel" by ordering that the term has its plain and ordinary meaning.  *See ActiveVideo*, 694 F.3d at 1326 (district court did not err in concluding disputed terms required no construction, where the plaintiff's "proposed construction erroneously read[] limitations into the claims . . . ." (citing *O2 Micro*, 521 F.3d at 1363)).

## VII.    "Asymmetrical Stretch Characteristics"

Rampion agrees with Pakage that the specification "expressly defines" "asymmetrical stretch."  (Rampion Br. at 17; *see* Pakage Br. at 18-20 (mentioning "express definition" four times).)  But this argument completely ignores Rampion's actual indefiniteness position: the phrase "asymmetrical stretch characteristics" *as used in claim 2* is indefinite.  Claim 2 requires that the "*stretch panel*" – not the *fabric or material* comprising the stretch panel – has "asymmetrical stretch characteristics."  The definition of "asymmetrical stretch" in the specification, however, applies to the material prior to incorporation into the stretch panel – not the material after incorporation into the claimed stretch panel.  *See* '030 Patent at 5:8-13 ("the

---

[7] Pakage incorrectly cited "JCC Ex. 47." (*See id.*)  The referenced prior art is located at Dkt. 47-53 (JCC Ex. 51).

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

coefficient of elasticity of *the material* [not the fabric or material sewn into the garment] has a first value in a first direction in the plane of the material and a second value different from the first value in a second direction at right angles to the first direction in the plane of the material." (emphasis added)). One of ordinary skill could not determine with reasonable certainty whether the "stretch panel" has "asymmetrical stretch characteristics" such that it meets the claim limitation because one would not know whether (a) to test the type of fabric used to make the stretch panel ("the material") *before* incorporation into the stretch panel (as described in the specification), or (b) to test the stretch panel *after* the stretch panel is sewn into the garment (as described in claim 2). (*See* Rampion Br. at 17-18.) Pakage could have drafted claim 2 in a way that resolves this indefiniteness – as it did with claim 4 ("the stretch panel *comprises a fabric having* a stretch of at least 30%"). Rampion does not challenge claim 4 as indefinite.

The difference is crucial. The type of material (or fabric) used to make the stretch panel can be considered to have "asymmetrical stretch characteristics" as a result of "the amount of stretch of a fabric" as described in the specification (*see* '030 Patent at 5:26-36). *But* the same fabric, once cut into the shape of the "stretch panel" and sewn into the "body" of the "male garment," may no longer have "asymmetrical stretch characteristics" based on the way the seams allow the "stretch panel" to stretch. Thus, this claim term may, or may not, be met depending on whether the material alone or the material incorporated into the stretch panel is tested.

Rampion agrees with Pakage that Rampion must prove indefiniteness by clear and convincing evidence, but disagrees with Pakage's erroneous assertion that indefiniteness cannot be decided at the *Markman* stage. "Where a claim cannot be construed to satisfy 35 U.S.C. § 112 (2), a court may find the term indefinite *during claim construction*, even in advance of any separate summary judgment motion." *Int'l Test Solutions, Inc. v. Mipox Int'l Corp.*, No. 16-cv-00791-RS, 2017 U.S. Dist. LEXIS 54630, at *8 (N.D. Cal. Apr. 10, 2017) (emphasis added) (*citing Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008) ("Indefiniteness is a *matter of*

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

*claim construction*, and the same principles that generally govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction." (emphasis added)); *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1368-69 (Fed. Cir. 2014) (affirming finding of indefiniteness in the district court's claim construction order).) Pakage seeks to delay a decision on this issue because the evidence of indefiniteness is allegedly not present before this Court. Here, the *only* evidence relevant to this question is the intrinsic record, all of which is before this Court.

## VIII.  **<u>"Rectangular"</u>**

Pakage makes two arguments as to why its proposed construction of "rectangular" is right and Rampion's is wrong. Both arguments are misguided and without support.

First, Pakage misrepresents what the specification discloses as to "rectangular." Pakage asserts the specification discloses the stretch panel to be a shape wherein "its top and bottom (shorter) sides are not equal in length to one another (and thus none of its corners actually square)." (Pakage Br. at 21.) Pakage concludes that because this shape would not be captured in Rampion's proposed construction, Rampion's construction would read out a preferred embodiment and therefore be incorrect. (*Id.*) But this misstates Pakage's choice of words for claim 3 and the specification. The passages of the specification Pakage cites are directed broadly to a "*generally* rectangular" stretch panel, not the narrower "*rectangular*" stretch panel. (*See* Rampion Br. at 19 (quoting '030 Patent at 4:37-38, 4:44-45).) Indeed, Pakage defined a "*generally* rectangular" stretch panel in the specification. (*See id.* (citing '030 Patent at 4:44-51).) But when Pakage drafted claim 3, it decided to claim a "rectangular" stretch panel, not the broader "*generally* rectangular" stretch panel. (*See id.* (quoting '030 Patent at Claim 3).) Pakage now seeks to add the "generally" concept into claim 3 when it did not claim anything but "rectangular" stretch panels. It is no excuse to ask the Court to fix this error now under the guise that Pakage's mistake would read out a preferred embodiment. *See General Elec. Co. v. Int'l Trade Comm'n*, 685 F.3d

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1034, 1041 (Fed. Cir. 2012) ("[A] possibly broader disclosure accompanied by an explicit narrow claim shows the inventor's selection of the narrow claim scope." (citations omitted)); *Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1215 (Fed. Cir. 2008) ("This court has repeatedly held that courts may not redraft claims to cure a drafting error made by the patentee. . . ." (footnote and citations omitted)).

Second, Pakage asserts that the plain and ordinary meaning of "rectangular" is a "shape[] that bring[s] to mind a rectangle because of some similarity to a rectangle." (Pakage Br. at 21.) Pakage cites dictionaries allegedly supportive of this vague "definition." (*See* Rampion Br. at 18-19 (citations omitted).) But these definitions support *Rampion's* – not Pakage's – proposed construction: "shaped like a rectangle." (*See id.*) As explained in Rampion's Opening Brief, Pakage's proposed construction most certainly includes shapes that are not "shaped like a rectangle." (*See id.* at 19-20.) Pakage also cites the same patternmaking book that it has used for other terms in an effort to support the proposition that "rectangular" need merely "resemble the shape of a rectangle" in the context of women's clothing. (Pakage Br. at 21 (citing Dkt. 47-47 (JCC Ex. 45).) But there is no evidence that one of ordinary skill in the art of the Patents-in-Suit would consider looking at such a book for the meaning of "rectangular" in this context, and Pakage fails to explain why a skilled artisan would do so. Further, the book does not define "rectangular." It appears to use it merely in a colloquial sense, and, in all but the last page, uses it to distinguish one shape from other shapes. (*See* Dkt. 47-47 (JCC Ex. 45) at 3 ("rectangular shape," in contrast to "oval shape" and "square shape," buttocks, waist/abdomen, and chest/back), and 4 ("Straight or rectangular," in contrast to "A-shape or triangular," "Pegged or inverse triangle," and "Bell shape," skirt silhouettes).)

## IX.  "A Dart Seam Stitched Along a Bottom Portion of the Pouch"

Pakage asserts "dart seam" has a "well-established meaning" by citing (1) an excerpt from the same patternmaking book for *women's dresses or tops*, and (2) an excerpt from a patternmaking

DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF — 23
Case No. 02:18-CV-01464-JLR

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

glossary that does not include an entry for "dart seam" or "seam" and does not include the substantive chapter presumably discussing the listed terms. (*See* Pakage Br. at 22-23 (citing Dkt. 47-50 and 47-51 (JCC Exs. 48 and 49).) Pakage fails to explain how these references would inform one of ordinary skill in the art of the Patents-in-Suit. Pakage further fails to explain how a skilled artisan would determine that "material [of a male garment] has been . . . removed to provide three dimensional shaping or space," as Pakage contends meets its construction. (*See id.* (conclusory statements that "[t]his can be done by . . . removing a wedge-shaped section of material at a seam").) Pakage's references to the figures allegedly "show[ing] dart seams from the inside and outside with the excess material removed" are of no help (*see id.* at 23 n.9): each referenced Figure (1-4) shows the "front seam or 'dart' 19" as a simple line, without indicating what – if anything – was removed.

In any case, this Court need not shoehorn in Pakage's definition of "dart seam" when the claim already provides the purpose of the claimed seam: "to provide extra volume in front of and underneath the genitals of a wearer." '030 Patent at Claim 15. A definition based solely on extrinsic evidence should be rejected.

Finally, Pakage does not explain why the dart seam should extend to the "top portion of the front portion" when the anatomy of male genitalia is such that the "extra volume" is needed only in the bottom portion of the pouch and not the top.

## X. <u>CONCLUSION</u>

For the foregoing reasons, and for the reasons in Rampion's Opening Brief (Dkt. 48), Rampion respectfully requests that the Court reject Pakage's proposed claim constructions and adopt Rampion's proposed claim constructions.

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

Respectfully submitted,

DATED this 7th day of June, 2019.     DORSEY & WHITNEY LLP

                                      /s/ Paul T. Meiklejohn
                                      Paul T. Meiklejohn, WSBA No. 17477
                                      Erin Kolter, WSBA No. 53365
                                      Columbia Center
                                      701 Fifth Avenue, Suite 6100
                                      Seattle, WA  98104
                                      Telephone:  (206) 903-8800
                                      Facsimile:  (206) 299-3594
                                      meiklejohn.paul@dorsey.com
                                      kolter.erin@dorsey.com

                                      Attorneys for Defendants

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2019 I caused to be served DEFENDANT RAMPION

USA INC. AND RAMPION ENTERPRISES LTD.'S RESPONSIVE CLAIM

CONSTRUCTION BRIEF on the following counsel of record by the method indicated:

| | |
|---|---|
| Brian C. Park | ☒ Via ECF |
| Stoel Rives LLP | ☐ Via Hand Delivery |
| 600 University Street, Suite 3600 | ☐ Via Overnight Courier |
| Seattle, WA  98101-4109 | ☐ Via Facsimile |
| Telephone: (206) 386-7542 | ☐ Via Electronic Mail |
| Facsimile:  (206) 386-7500 | |
| brian.park@stoel.com | |

Steven T. Lovett
Nathan C. Brunette
Stoel Rives LLP
760 S.W. Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  (503) 224-3380
Facsimile:   (503) 220-2480
steve.lovett@stoel.com
nathan.brunette@stoel.com

Attorneys for Plaintiffs


/s/ Paul T. Meiklejohn
Paul T. Meiklejohn

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820